**DELVERDE, SrL and Delverde USA, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

and

**Borden, Inc., Hershey Foods Corp., Gooch Foods, Inc., Defendant–Intervenors.**

Slip Op. 98–137.
Court No. 96–08–01997.

United States Court of International Trade.

Sept. 25, 1998.

Neville, Peterson, & Williams (Lawrence J. Bogard) for plaintiff.

Mound, Cotton & Wollan (Constantino P. Suriano) co–counsel for plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (A. David Lafer), Terrence J. McCartin, Senior Counsel, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Collier, Shannon, Rill & Scott (Paul C. Rosenthal, Kathleen W. Cannon, and Lynn Duffy Maloney) for defendant–intervenors.

## OPINION

RESTANI, District Judge.

This matter is before the court following remand to the United States Department of Commerce ("Commerce") of its final countervailing duty determination in *Certain Pasta from Italy,* 61 Fed.Reg. 30,288 (Dep't Commerce 1996). *See Delverde v. United States,* 989 F.Supp. 218, 234 (CIT 1997) [hereinafter *"Delverde I"*]. In its decision ordering remand, the court found that Commerce had not explained adequately its reasoning for finding a countervailable benefit to the private purchaser of assets from a private corporation which had received countervailable subsidies. *Id.* at 232–33.

Implicit in the court's decision was the presumption that benefit is to be judged in reference to the entity whose goods will be charged with countervailing duties. Commerce has now explained that this is not its focus. It assesses benefit only at the time the subsidization occurs. Remand Determination, at 41. Commerce ignores subsequent market events in determining whether a subsidy is passed on to the purchaser and, if so, how much. *Id.* In fact, Commerce *presumes* a portion of the subsidy is passed through. *See id.* at 23.

The remainder of the remand determination is largely surplusage. If Commerce's application of the statute in this regard is permissible, it need not engage in further analysis and may continue to presume partial subsidy pass-through and may apply its formula, which simply measures the proportion of subsidy pass-through. Notwithstanding Commerce's argument that its formula measures whether subsidization has occurred, in reality, the formula only adjusts the size of the countervailing duty depending on how far in the past the subsidization occurred and the relative size of the subsidy in relation to the value of the assets sold. *See* Remand Determination, at 44.

As explained in *Delverde I,* 989 F.Supp. at 230–31, legislative history is lacking as to the meaning of the new subsidy pass-through statute, 19 U.S.C. § 1677(5)(F) (1994) (the Change in Ownership provision), in the con-

text of private to private sales.[1] The issue is whether Commerce's practice of determining benefit only at the time of original subsidization and ignoring any role of the sale in defining benefit is a permissible interpretation of both 19 U.S.C. §§ 1677(5)(B) and (F) (1994), the benefit requirement and change in ownership provisions of the countervailing duty statute. Congress' general approval of past countervailing practice, Statement of Administrative Action accompanying H.R. 103–5110, at 928 (1994) ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 3773, 4241, does not resolve this specific issue before the court, which was not clearly settled at Commerce at the time Congress passed the changes to the unfair trade laws necessitated by the Uruguay Round. *See Delverde I,* 989 F.Supp. at 231–32.

■ As indicated in *Delverde I,* the change of ownership provision itself does not indicate that it is to be applied only to public sellers. *See* 19 U.S.C. § 1677(5)(F). Thus, there is room for application of the statute to a purely private transaction, as well as for a narrower interpretation. Commerce has selected the broader meaning and finds the statute applicable to purely private transactions. *See e.g. Certain Pasta from Italy,* 61 Fed. Reg. at 30,298. But, as discussed in *Delverde I,* 989 F.Supp. 228–29, the statute sug-

gests that not all sales will necessarily result in subsidy pass-through. In the past, Commerce has not considered market events that follow the conferral of a subsidy, including the pricing method of a subsequent sale, in assessing the value of the subsidy passed through to the purchaser. May we therefore assume that Congress, aware of Commerce's practice, in allowing for the possibility of no pass-through, contemplated the case of a subsidy so small or temporally remote that its value under Commerce's formula would approach zero and thus be not actionable? If so, the statute might allow Commerce to disregard the intention of the parties to the sales transaction, as it currently does. This is not the most natural reading of the statute, but in view of Commerce's explanation of its past practice and Congress' presumed awareness of the practice, Commerce's interpretation of the change in ownership provision is permissible.[2]

■ The next issue is whether the "benefit" requirement of 19 U.S.C. § 1677(5)(B) will bear the weight of Commerce's view.[3] This is somewhat more problematic. To remove the current owner of the goods at issue entirely from the determination of benefit intuitively, at least, is troublesome. There are, however, some very practical reasons to

1. The statute provides:

   **(F) Change in ownership**
   A change in ownership of all or part of a foreign enterprise or the productive assets of a foreign enterprise does not by itself require a determination by the administering authority that a past countervailable subsidy received by the enterprise no longer continues to be countervailable, even if the change in ownership is accomplished through an arm's length transaction. 19 U.S.C. § 1677(5)(F).

2. The court notes the recent decision of the Court of Appeals in *Inland Steel Bar Co. v. United States,* No. 97–1257, 97–1334, 155 F.3d 1370 (Fed.Cir.1998). This is one of a series of opinions addressing the issue of pass-through of subsidies when all or part of government-owned production is privatized. The theory of pass-through or lack thereof in such cases is based on repayment of the subsidies. This theory is difficult to apply in a private to private sale transaction. The case does support the general concept of some deference to agency decision-making in this area.

3. There is no explanation in the legislative history of "benefit" with reference to subsidy pass-

through under the new statutory provision requiring that the subsidy confer a benefit. *See* 19 U.S.C. § 1677(5)(B). That section provides:

   (B) Subsidy described
   A subsidy is described in this paragraph in the case in which an authority -
   (i) provides a financial contribution,
   (ii) provides any form of income or price support within the meaning of Article XVI of the GATT 1994, or
   (iii) makes a payment to a funding mechanism to provide a financial contribution, or entrusts or directs a private entity to make a financial contribution, if providing the contribution would normally be vested in the government and the practice does not differ in substance from practices normally followed by governments,
   to a person and a benefit is thereby conferred. For purposes of this paragraph and paragraphs (5A) and (5B), the term "authority" means a government of a country or any public entity within the territory of the country. *Id.*

do so. First, determinations as to the economic benefit of the past subsidy to the buyer are extremely difficult to make. The parties are unlikely to leave documentary evidence that the purchase price was discounted based on the likelihood of future countervailing duties on the plant output. Second, the likelihood of proving a purchase price was discounted to account for countervailing duties based on a value comparison may be remote. Third, and most importantly, what is needed is a clear rule. If parties to an arm's-length transaction know Commerce's practice is to recognize pass-through of subsidies according to its formula, purchasers of productive assets from entities which have received subsidies related to such assets will bargain accordingly. If the same parties know Commerce's practice is to not recognize pass-through, they likewise will bargain accordingly. Either clear rule is likely to be reflected in the selling price.

The next problem is to determine whether there was a mid-stream change of practice by Commerce or court decision which would make application of Commerce's interpretation of benefit to the parties here inequitable because, following the logic above, the parties would not have priced the sale correctly. The post-subsidization sale at issue here occurred in March, 1991. Remand Determination, at 9. At that time Commerce had not yet dealt comprehensibly with subsidy pass-through in the context of sale of either government or privately owned productive assets. In 1993, Commerce published its methodology with regard to privatization of government assets. *Certain Steel Products from Austria,* 58 Fed.Reg. 37,217, 37,265 (Dep't Commerce 1993) (general issues appendix).[4] Nonetheless, prior to March, 1991, Commerce had not disavowed subsidy pass-through in any context. At the time of the sales here, the parties at least could have conceived of the possibility that prior subsidization might have consequences outlasting the change of ownership. At that time judicial opinions to the contrary had not intervened.

While Commerce has not engaged in this reasoning expressly, these categories of con-

cern seem to underlie its desire to define benefit as it does and not to assess the specific intention of the parties, but rather to focus on the original receipt of subsidies. *See Remand Determination,* at 15. If viewed in the light of the reasons set forth herein, there is no unfairness in recognizing pass-through of a portion of the subsidies received by the prior owner.

The court concludes that none of the legislation at issue clearly resolves this case. Congress has left room for Commerce to devise a reasonable answer to the problem of whether and to what extent subsidies should be recognized after a private sale of assets. While Commerce alternately might have solved the problem by focusing on changes in market conditions and the intention of the parties, the solution it has devised is compatible with the overall intention of the statute. Moreover, this approach may prevent improper avoidance of the duties and makes some economic sense, as explained here. Congress presumably understood these matters when it authored the provisions at issue, and we presume Commerce likewise understands these matters, although it failed to express them clearly in its Remand Determination.

Accordingly, as this is the only issue remaining after remand, Commerce's determination is sustained.

### JUDGMENT

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

**IT IS HEREBY ORDERED:** that the determination on remand of the United States Department of Commerce is sustained.

---

4. This methodology has been sustained on appeal. *See supra* note 2.